Scott D. Righthand, Esq., SBN: 087635
Brittany Rogers, Esq., SBN: 288522
THE LAW OFFICE OF SCOTT RIGHTHAND
A Professional Corporation
425 California Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 544-0115
Facsimile:  (415) 544-0116
Scott@righthandlaw.net
Brittany@righthandlaw.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONALD LOEBER and MARIE LOEBER by and through her Successor In Interest, MICHELLE LOEBER,<br><br>        Plaintiffs,<br><br><br>    v.<br><br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No.: 3:21-CV-03866-LB<br><br>**PLAINTIFFS DONALD AND MARIE LOEBER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS**<br><br>Date:   August 22, 2024<br>Time:   9:30 a.m.<br>Dept.:  Courtroom B – 15th Floor<br><br>Honorable Judge Beeler<br>United States Magistrate Judge |

**TABLE OF CONTENTS**

**I.   INTRODUCTION** ..................................................................................1

**II.   SUMMARY OF ARGUMENT** .............................................................1

**III.  FACTUAL BACKGROUND** ................................................................3

**IV.  LEGAL ARGUMENT** .......................................................................10

   **A.  The Discretionary Function Exception Does Not Apply: Both**
      **Federal and State Law Require Mandatory Reporting of**
      **Threats of Criminal Acts** ...................................................................10

     1.   The Discretionary Function Exception Does Not Apply: Federal
        Law and VA Policy Required VA Employees to Report Wong's
        Threats Internally and to Local Law Enforcement.   .................11

     2.   The Discretionary Function Exception Does Not Apply Because
        the Failure to Report Wong Was Not Based on Policy Analysis. ............16

     3.   Directive 1605.01 Enables Compliance With The Law And
        Mandatory Reporting ...........................................................19

   **B.  The Misrepresentation Exception Is Inapplicable In A Failure**
      **To Report Case When Mandatory Reporting Is Required** ....................20

   **C.  The Due Care Exception Is Inapplicable: VA Regulations Do**
      **Not Prescribe A Course of Action For VA Employees** ...........................22

   **D.  The Plaintiffs Claims Are Not Preempted: VA Mandatory**
      **Reporting and State Law Do Not Conflict** .................................................23

**V.   OBJECTIONS TO EVIDENCE** ...........................................................25

**V.   CONCLUSION** ...............................................................................25

## **TABLE OF AUTHORITIES**

CASES

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970)..................................................................................................................1

*AFP v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 US Dist. LEXIS 122794, 2022 WL 2704570, at *14 (E.D. Cal. July 12, 2022) ........................................22

*Aguilar v. Int'l Longshoremen's Union Local No. 10,* 966 F.2d 443,447 (9th Cir. 1992.) .................................................................................................................25

*Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)...........................................1

*Bear Med. v. United States*, 241 F.3d 1208, 1216 (9th Cir. 2001)......................................18

*Bear Medicine.*" *Powers*, No. C21-0517 TSZ, 2023 U.S. Dist. LEXIS 17881, at *16..........................................................................................................................19

*Berkovitz v. United States*, 486 U.S. 531, 536-537 (1988)............................................ 10, 19

*Block v. Neal*, 460 US 289, , 297 298 (1983) ........................................................21

*Camozzi v. Roland/Miller and Hope Consulting Group*, 866 F.2d 287, 290 (9th Cir. 1989) .................................................................................................................17

*Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.1996) .................................25

*Dalke v. Upjohn Co.*, 555 F.2d 245, 248 (9th Cir. 1977)...........................................1

*Doe A.L. v. United States*, No. 16-2627, 2017 U.S. Dist. LEXIS 62263, at *17 (D. Kan. Apr. 24, 2017) ................................................................................................12

*Esquivel v. United States*, 21 F.4th 565, 573 (9th Cir. 2021)............................................11

*Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir. 1998)...........................................17

*Gonzalez v. United States*, 814 F.3d 1022, 1030 (9th Cir. 2016) ........................................19

*Green v. United States*, 630 F.3d 1245, 1252 (9th Cir. 2011)............................................17

*Hoptowit v. Ray*, 682 F.2d 1237, 1262 (9th Cir. 1982) ...............................................14

*Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007)................................25

*Kim v. United States*, 940 F.3d 484, 493 (9th Cir. 2019)........................................21

*Kingdomware Techs., Inc. v. United States*, 579 US 162, 172 (2016)................................11

*Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003)....................................21, 22

*Maffei v. Northern Ins. Co. of New York,* 12 F.3d 892, 898-99 (9th Cir.1993) .................25

*Marquis v. Chrysler Corp.*, 577 F.2d at 631 ................................................................1

*McHugh v. United Service Auto. Assn* 164 F3d 451 (9th Cir. 1999)................25

*Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)...............................18

*Neustadt v. United States*, 366 US at 706-07, 711 n.26................................20

*Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ........18

*Norcal Nursery, Inc. v. United States*, No. 2:20-cv-00868-MCE-DMC, 2021 US Dist. LEXIS 129646, at *13 (E.D. Cal. July 12, 2021) ....................................21

*NRDC., Inc. v. Perry*, 940 F.3d 1072, 1080 (9th Cir. 2019) ............................11

*Powers v. United States*, No. C21-0517 TSZ, 2023 US Dist. LEXIS 17881, at *14 (WD Wash. February 2, 2023)..................................................................17

*Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992)............................22

*Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir. 1977) .....................2, 20

*Routh v. United States*, 941 F.2d 853, 856 (9th Cir. 1991).............................18

*RSB Vineyards, LLC v. Orsi*, 15 Cal. App. 5th 1089, 1102 (2017).................21

*Schurg v. United States*, 63 F.4th 826 (9th Cir. 2023) ....................................18

*Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439 (9th Cir. 1979) ........1

*Silkwood v. Kerr-Mcgee Corp.*, 464 US 238, 256 (1984) .................................25

*Sun Valley Gasoline, Inc. v. Ernst Enters*, 711 F.2d 138, 139-40 (9th Cir. 1983)................1

*Sutton v. Earles*, 26 F.3d 989, 998 ( 9th Cir. 2008)......................................17

*Tarasoff v. Regents of the University of California*, 17 Cal.3d 425 (1976).....23, 24

*Terbush v. United States*, 516 F.3d 1125, 1134-35 (9th Cir. 2008)................18

*Total TV v. Palmer Commc'ns*, 69 F.3d 298, 304 (9th Cir. 1995).................24

*United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970) .........................1

*United States v. Gaubert*, 499 US 315, 324-35, (1991)................................18

*United States v. Varig Airlines*, 467 US 797, 814 (1984).............................10

*Vickers v. United States*, 228 F.3d 944, 953 (9th Cir. 2000) .....................17, 19

*Weissich v. United States*, 4 F.3d 810 (9th Cir. 1993)...................................19

*Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005)23 ...................22, 23

*Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005)...................17

STATUTES

28 USC § 2680(a) ................................................................................10

38 USC § 1709 .............................................................................. 8, 11

5 USC 552(a)(b)(8 ..............................................................................11

5 U.S.C. § 402 ....................................................................................13

68 FR 17549, 17549 ...........................................................................13

85 FR 71838, 71842 ..................................................................... 16, 24

85 FR 71838, 71842 ...........................................................................24

Cal. Welf. & Inst. Code § 5150 ...................................................... 6, 7

Cal. Welf. & Inst. Code § 8100(b) ............................................... 15, 16

Cal. Welf. & Inst. Code § 8103(f) .......................................................5

Cal. Welf. & Inst. Code §8105(c) ................................................. 15, 16

Cal. Welf. & Inst. Code 5150.05 .................................................... 6, 7

California Civil Code (CCC) section 43.92 ...........................3, 23, 24

Federal Rule of Civil Procedure 12(b)(1) ..........................................1

Federal Rule of Civil Procedure 9(b) ...............................................21

Federal Tort Claims Act (FTCA) .................1, 2, 10, 16, 19, 20, 21, 22, 23


OTHER AUTHORITY

29 CFR 1960.8(a) ......................................................................... 13, 14

29 CFR. § 1904.5 ...............................................................................13

38 CFR § 1.200, ..................................................................................11

38 CFR § 1.203 ........................................................................11, 13, 15

38 CFR § 1.204 ...................................................................................13

38 CFR §1.201 .......................................................................11, 12, 13

38 CFR 1.218(c)(3) ....................................................................... 16, 24

45 CFR § 164.502(b)(2)(v) ................................................................24

45 CFR 160.203.................................................................................................23

45 CFR 164.512(j)(1)(i) (A), (B)....................................................................10, 23, 24

Code of Federal Regulations (CFR)..........................................................................2

*Irving Younger*, Sovereign Admissions: A Comment on United States v. Santos,
43 N.Y.U. L. Rev. 108 (1968)...............................................................................14

OSHA Directive CPL 02-01-058........................................................................ 13,14

Restatement (Third) of Torts § 42 (Am. Law Inst. 2013)...........................................18

VHA Directive 1160.08 ..................................................................................... 15, 24

VHA Directive 1605.01 ...........................................................................1, 2, 19, 20, 23

VHA Directive 1605.01(17)(1), (2) ...................................................................... 2, 20

VHA Directive 2010-053....................................................................................15

VHA Directive 2012-026........................................................2, 3, 11, 12, 15, 24

VHA Directive 5019.02(1)..................................................................................12

VHA Directive 7700............................................................................................ 13, 14

VHA Directive 7701............................................................................................14

# I.    **INTRODUCTION**

Defendant United States has been sued in this case by the families of Christine Loeber, and Jennifer Golick, two of three women held hostage and massacred by mentally unstable war veteran, Albert Wong, because United States Veterans Administration (VA) employees, both health care providers and a Peer Specialist, failed to comply with similar if not identical, mandatory federal and state reporting requirements. Jennifer Gonzales, the third woman Wong held hostage and killed was a United States Veterans Administration (VA) employee. The VA provided care and peer support to Wong for three years and ignored homicidal threats and threats to commit suicide beginning in 2016 before Wong committed this triple murder/suicide.  The threats were well documented. The failure of VA employees to comply with the law requiring reporting known homicidal threats to law enforcement, was a substantial factor in failing to prevent this mass killing.

# II.    **SUMMARY OF ARGUMENT**

Defendant United States' 12(b)(1)[1] Motion to Dismiss asserts that the wrongful death and survival claims are barred based upon 1) Discretionary immunity; 2) Defendants use of due care; 3) Misrepresentation immunity and 4) Preemption.

The initial argument advanced by the Defendant is that the 'discretionary function' exception bars the Plaintiffs' suit under the Federal Tort Claims Act (FTCA). It relies upon VHA Directive

---

[1] The government has moved pursuant to Federal Rule of Civil Procedure 12(b)(1) for an order dismissing all claims asserted in this action for lack of subject matter jurisdiction. However, the government has already answered the complaint. Any Rule 12(b) motion, even one for lack of subject-matter jurisdiction under Rule 12(b)(1), is untimely if made after the defendant's answer is filed. Furthermore, when a factual challenge implicates the merits of the plaintiff's cause of action, the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. *See Sun Valley Gasoline, Inc. v. Ernst Enters*, 711 F.2d 138, 139-40 (9th Cir. 1983). "In ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). If the nonmoving party has raised a genuine issue of material fact, and the evidentiary matter in support of the motion does not establish the absence of such issue, summary judgment must be denied even though no opposing evidentiary matter is presented. See *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Dalke v. Upjohn Co.*, 555 F.2d 245, 248 (9th Cir. 1977). Substantial evidence to raise a triable issue is more than a mere scintilla, *Marquis v. Chrysler Corp.*, 577 F.2d at 631, but the moving party has the burden of clearly demonstrating the absence of any genuine issue as to the existence of each material fact which under applicable principles of substantive law would be required to support a judgment in its favor. *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970). *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439 (9th Cir. 1979).

1605.01 that it claims governed the "reporting of Wong and the disclosure of his confidential medical information" (Def. Memo at 8) when truly the reporting of Wong was governed by VHA Directive 2012-026. Directive 1605.01 did little more than authorize disclosure of protected health information (PHI) under the circumstances of this case. See 1605.01(17)(1), (2). This Directive explicitly yields to other laws, regulations and mandates[2] allowing VA employees to comply with laws without concern for running afoul of the privacy provisions. It does not govern reporting and it did not prevent it. Here, the VA and its employees were required by the Code of Federal Regulations (CFR), VA Directives and VA Policies to report Wong's threats both internally and to local law enforcement. Neither was done.

The Government also argues that the misrepresentation exception to the FTCA, bars these claims. In fact, *Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir. 1977) (en banc) directly held that the misrepresentation exception to FTCA did not bar a negligence claim based on failure to communicate information.

Defendant next asserts that there is no subject matter jurisdiction here because all government employees used due care. In fact, VA employees intentionally and recklessly ignored the repeated, direct threats of homicide against the three women Wong finally shot and killed on March 9, 2018 and failed to comply with federal and state mandatory reporting laws.

Finally, the government claims that HIPAA preempts state law requiring reporting of threats of criminal acts. That argument is specious as there is no conflict between federal and state law. Preemption is not found based on hypothetical supposition such as those offered by this Defendant, and, in any event, the VA's stated policy for mandatory reporting is virtually the same as state law. Moreover, there has been no showing that reporting here would have included disclosure of PHI rather than merely identifying Wong, his whereabouts and threats.

HIPAA applies to disclosure of PHI and does not prevent or even interfere with the mandatory reporting of a threatened criminal act likely to end in injury or death to a third party.

---

[2] <u>Required by Law Exception</u> (1) VHA may use individually identifiable health information ***to the extent that such use is mandated or required by law*** and the use complies with and is limited to the relevant requirements of such law; (2) VHA may disclose individually …***when mandated or required by law***, e.g. statute, regulation, FOIA, court order…(emphasis added).

Instead, HIPAA specifically allows the disclosure of PHI, including information from mental health records to law enforcement and any other persons who may reasonably be able to prevent or lessen the risk of harm to a known third party. Federal law imposes mandatory reporting requirements on VA employees if there is a threatened criminal act. State law does too. California Civil Code (CCC) section 43.92; VA Directive 2012-026, Ex. N. There is no conflict of laws and there is no preemption.

### III.   FACTUAL BACKGROUND

On March 9, 2018, decedents Christine Loeber, Jennifer Golick and Jennifer Gonzales were held hostage and then brutally murdered by veteran Albert Wong. Wong was a returning veteran from Iraq being treated for severe PTSD at TPH and the United States Veterans Administration ("SFVA" or "VA"). He had been receiving contemporaneous assistance and treatment from both employees of TPH and the SFVA for about two years. Wong was both a mental health patient of the VA seeing VA therapists and in receipt of Peer Specialist assistance from Almon Bundy, a VA employee who was not a therapist or health care provider. Ex.[3] C (V. II), at 350:14-353:16.

The VA's involvement with Albert Wong began in November 2015, when Almon Bundy first was assigned to meet Albert Wong. Wong was referred to Bundy by Patrick Jolly, the Napa County veteran service officer, concerned about Albert Wong's mental state. Ex. C (V. I) at 127:1-128:10; 129:12-20. During the initial period of working with Wong, Bundy observed that Wong was depressed and anxious and did not have any social interactions or support systems outside of his 92-year-old grandmother. Ex. C (V. I) 134:14-135:4. Bundy noted a number of concerning behaviors during his initial interactions with Wong, including renewed drinking. Id. at (V II) 233:21-234:10. On March 17, 2016, Wong expressed concerns about potentially losing his right to own guns and showed catastrophic thinking Ex. C (V II) at 234:11-22. VA employee Dr. Andrew Turner also began treating Wong at this time. Dr. Turner was Wong's primary therapist and provided Wong with individual psychotherapy from 2016 to 2018. Ex. E. 81:8-10, 167:20-23. Dr. Turner testified that Wong frequently failed to attend scheduled therapy sessions, and Wong's engagement in therapy varied over time. Ex. E. 111:3-12.

---

[3] All references to 'Ex.' are to the Declaration of Scott Righthand, Esq. unless otherwise noted.

**<u>Suicide Threat No.1:</u>** On April 21, 2016, Wong first expressed to Bundy that he was having suicidal thoughts. Ex. C (V II) at 235:8-236:17.

**<u>Suicide Threat No.2:</u>**  On May 6, 2016, Wong admitted to having thoughts of hurting himself/suicide but denied having a plan. Ex. C (V I) 152:25-155:11. He also mentioned not taking his psychiatric medications. Id. at (V I) 155:25-157:14.

**<u>Suicide Threat No. 3:</u>**  By July 18, 2016, Wong's condition had worsened. Wong called Bundy requesting an urgent meeting. He stated he was feeling like he was going to die at any moment and expressed having thoughts of hurting himself due to his inability to escape bad feelings and insomnia. Bundy offered to take Wong to the hospital, and Wong agreed to give his firearms to a trusted third party, which Bundy verified that evening. Id. at (V I) 161:23-169:5. However, by August 7, 2016, just three weeks later, Wong had retrieved his firearms and was headed to the shooting range. Id. at (V II) 258:20-260:5.

**<u>Suicide Threat No.4:</u>**  Wong's mental health continued to deteriorate. On September 7, 2016, Wong admitted to thinking about hurting himself over the past few weeks but denied having a plan. Id. at (V II) 256:6-261:2.

**<u>Homicide Threat No. 1/Suicide Threat No.5</u>**:  On October 13, 2016, ███████████  █████ ██████████████████████████████████████████████████ ███████████████████████████████████████████ Ex. A, Oct.13, 2016 Bundy note; Ex. C (V I) at 182:23-185:2; 82:3-14. Bundy had no formal training in homicide risk assessment. Ex. C (V I) 75:24-76:14. Bundy asked Wong if he had made any specific plans, to which Wong responded, "he isn't the plan kind of person; he would just do it." Ex. C (V I) 180:6-24. Bundy did not report him to law enforcement. Id. at (V I) 82:19-83:12. Bundy subsequently recommended Wong for the TPH program. Id. at (V I) 196:19-20; 198:2-10. According to Dr. Turner, TPH was intended to primarily be a residential and academic support program for veterans, focusing on providing housing and academic and vocational support. Ex. E, 112:24-113:7. Wong was accepted into the TPH program and was initially the only resident on site. Ex. C at (V I) 198:11-199:2. At first, Wong seemed happy at TPH. However, issues began to emerge after his initial positive period. Wong blamed his dissatisfaction on his interactions with TPH Staff. Id. at (V I) 199:3-200:5.

**Homicide Threat No. 2:**  On July 14, 2017, ███████████████████████

███████████████████████. Ex. A, Bundy note July 14, 2017. Wong further stated he

was distraught over staff at the TPH, who were "not living up to their promises." Ex. C (V II) at

275:7-23. In making these statements, Wong was specifically referring to killing TPH staff members.

Id. at (V II) 387:12-388:4.

**Suicide Threat No. 6:**  ████████████████████████████████

███████████████████████████. Ex. A, Bundy Oct 27, 2017 note; Ex. C at (V II)

284:20-22. ███████████████████████

███████████████████████ (Ex. A, Bundy Oct 27, 2017 note; Ex. C. at (V II)

287:1-22. █████████████████████████████████████,

Bundy did not take any immediate action to secure the weapon, contact local law enforcement,

contact the Suicide Prevention Coordinator or the Disruptive Behavior Committee, or tell Pathway

staff they were in danger as Wong had bluntly stated that if "he had his firearms, he would have

used them." Ex. C (V II) at 279:10-280:3, 281:6-23.

**Suicide Threat No. 7:**  On December 20, 2017, Wong called Bundy in distress, saying he planned

to kill himself in the morning. Ex. C (V II) at 295:12-20. This call led to an immediate meeting

where Bundy went to the TPH to meet Wong. Wong then transferred Wong's weapons to Bundy's

car and had a lengthy conversation wherein Wong revealed more details about his suicidal

intentions. Id. at (V II) 291:7-294:25. This December 20, 2017, incident was a critical event in

Bundy's interactions with Wong, involving an urgent response to Wong's suicidal intentions, the

transfer of weapons, and an extended conversation to address Wong's mental state.

Nonetheless, Bundy did not report the threats or Wong's possession of firearms on state

property to local law enforcement or the VA's Disruptive Behavior Committee. Despite clearly

meeting the criteria for a 5150 involuntary hold, VA employee Jennifer Gonzales did not place

Wong on a 5150 hold. Had she executed a 5150 hold (involuntary psychiatric hold), he would have

lost access to his guns for five years. Welfare and Institutions Codes section 8103(f). Instead, Ms.

Gonzales convinced Wong to voluntarily seek admission to the Psychiatric Intensive Care Unit

(PICU) of the VA hospital. Once evaluated there, it was determined that ██████████████

██████████████████████████████████████████████████ Ex. A

December 20, 2017 note, ██████. ████ ████████████, Wong was discharged from the hospital in less than 48 hours. Dr. Turner raised his concerns about the inadequate treatment provided during such a short hospital stay to Dr. Gonzales. She responded by stating that "nothing could be done to keep Wong in the hospital" because he had entered voluntarily. Ex. E at 171:18-172:16.

**Homicide Threat No. 3:**      In December 2017, near the time of Wong's hospitalization, Albert Wong told TPH staff member Haley Rekdahl that he wanted to kill TPH director Christine Loeber. Ex. H at 92:13-18; 101:3-14. According to Rekdahl, Wong's anger and threats were not limited to Christine Loeber. He expressed anger and made threats against other clinical staff members as well, including Christine Loeber and Jennifer Gonzales and the entire clinical team. Ex. H at 91:1-14. Despite all this, Wong's threats to kill staff were not reported to local law enforcement, the Disruptive Behavior Committee, or the OIG.

Shortly after his return from the hospital, TPH staff including Jennifer Gonzales discovered a large knife in Wong's vehicle. Ex. H, ex.66, Ex. H, at 95:5-24. The knife incident appears to have been a significant event that raised grave concerns about Wong's potential threat level. However, Wong's possession of the knife was not reported to the DBC or local law enforcement in violation of CalVet's strict no-weapon policy.

**Homicide Threat No. 4/Suicide Threat No. 8:** On January 31, 2018, ████████████████ ████████████████████████████. Ex. A, January 31, 2018 ████████. ████████ ██████████████████████████. ████████████████████████████ ████████████████████████████████████████████ ██████████████████ Id. ████████████ ████████████████████ ████████████████████████████████████████████ ████████████████. ████████████████████████ ████████████ Id. ████████████████████ ██████████████████████ Id. ████████████████ ██████████ ████████████████████████████████████████. *See* Cal.

Welf. & Inst. Code § 5150, 5150.05 ("When determining if a person should be taken into custody pursuant to subdivision (a), the individual making that determination shall apply the provisions of Section 5150.05 and shall not be limited to consideration of the danger of imminent harm.")

**Homicidal Threat No. 5:** On or about 30 days before the shooting, Ms. Rekdahl recalls that she took part in a conversation discussing Wong's threats to kill Loeber and Gonzales. Ex. H at 96:6-98:8.  On February 8, 2018, Dr. Sears' e mail acknowledged ██████████████ ███████████████████████████████████████████ Ex. K February 18, 2018 email █████████████. ████████ ██████████████ █████████████████████████████████. Ex. K February 15, 2018 e mail ████████. Dr. Sears, a member of the VA Suicide Prevention Team assessing Mr. Wong, had no particular expertise in the area of homicide risk assessment. Ex. D at 170:20-23; 218:16-19.

By February 6, 2018, Peer Specialist Bundy had learned from Jennifer Gonzales that Wong had threatened to kill TPH staff. Ex. C (V III) at 96:2-98:21. Neither Gonzales nor Bundy reported the threats to the Disruptive Behavior Committee or police. Id. (V III) at 104:16-19.

On February 13, 2018, ████████████████████████████ ███████████████████████████████. Ex. A, February 13, 2018 Gonzales note USA 5871-5873. ███████████ █████████████████████ ████████████████████████████████████████ █████████████████████. Id. ██████ ████████████ ███████████████████████████████████████████ █████████████████████████. ██████████ ███████████████████████████████████. Id.  In a February 13, 2018, email █████████████ ████████████████████ █████████████████████████████████████████████. [4] Ex. K, email thread:

---

[4] DBRS is a secure, facility-managed, web-based electronic system to collect and manage reports of behavioral events that cause a safety concern. … Anyone with access to the VA computer network can report a disruptive behavior event in the DBRS, including non-medical personnel like Bundy. …

USA 6721-6722. ███████████ █████████████████████████

████████████████████████████████████████████████████████

██████████. Ex. K, email thread USA 6721. Accordingly, no DBRS report was ever made, and Wong was never properly assessed for potential violence by the VA as required by 38 USC § 1709, the OSHA regulations.

On February 15, 2018, ████████████████████ ████████████████

████████████. Ex. A, Bundy February 15, 2018 note. ████████████

████████████████████████████████████████████████████

████████████. Id. Bundy stated that around that time Jennifer Gonzales informed Bundy that Wong threatened to kill her and Christine Loeber. Ex. C (V I) at 201:23-205:2. Bundy then contacted Ms. Loeber who confirmed this. Id. Ms. Loeber told Bundy that Wong had threatened to kill her and Ms. Gonzales to her face on more than one occasion. Id. at (V I) 205:12-209:15. Bundy, at that time, believed Wong was likely to kill himself and others. Id. at (V I) 207:23-208:4. He believed that Wong was likely to kill Loeber and Gonzales. Id. at (V I) 208:5-9. He thought because he had confiscated the guns, there was VA complacency. Id. at (V I) 205:12-208:22. He suggested to Ms. Loeber that she call the police, disagreed with the way Ms. Loeber and Ms. Gonzales were handling this matter and he thought the police should be called. Ex. C (V III) at 112:8-115:7. Bundy testified that he never went to the Disruptive Behavior Committee with this information and never contacted law enforcement about it. Id. at (V III) 109:2-13; (V I) 209:11-15.

On February 26, 2018, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████. Ex. A February 23, 2018 Gonzales note. ██████████

██████████████████████████████████████████. ██████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████. Ex.

---

[T]hey're not considered part of the patient's medical records. When a report is filed, it generates an automated alert that goes to a designated subgroup of individuals on the Disruptive Behavior Committee. (Ex. L, 32:23-39:11.)

B USA000108; Ex. J USA008133-8134, USA008148; Ex. I 117:23-118:4. VA employees never initiated a 5150 hold for Wong so guns were available--he was never on the 'no-buy list".

On March 7, 2018, Tana Teicheira, a LCSW and Suicide Prevention Coordinator at the Northern California VA Healthcare System (NCHCS) covering the Sacramento area, received a call from Dr. Sears who informed Teicheira ███████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. . Ex. G ex.200, Ex. F at 54:18-56:12; 57:24-58:9; 63:6-64:21. ███████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ████████████████████████████████████████████████. . Ex. G, ex.200; Ex. F at 70: 3-13. █████████████████████████████████████████████ ██████████████████████████████████████ Ex. G at ex. 201. ███████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████ Ex. G at ex. 200; Ex. D 278:17-18. Teicheira refused to accept a transfer of the case from SFVA due to Wong's unknown location and SFVA's more comprehensive knowledge of his history. Ex. F. (V II) 57:14-24, 58:3-6, 58:12-19, 55:2-9, 151:15-17. █████████████ █████████████████████████ Ex. G, ex.200. and refused to take ownership of the potentially violent situation. Ex. F at 58:21-59:4. After the call with Dr. Sears, Teicheira contacted Officer Matthews at the Mather VA Police as she was concerned that Wong was potentially volatile. Ex. F Vol. II at 60:15-24. According to Teicheira, internal communications with VA police are not a breach of patient confidentiality. Ex. F. (V II) at 62:20-63:4. In her call with Officer Matthews, Teicheira told him about Wong's situation and potential risks and discussed the possibility of Wong presenting at their facility. After a discussion with the VA police, Teicheira decided not to contact Sacramento police or any other local law enforcement. Ex. F at Vol. II 69:21-70:15. Teicheira's refusal to contact local law enforcement was the last best

hope to avert the ensuing tragedy. Two days later, Wong returned to TPH in Yountville and murdered the women he had threatened to kill.

## IV.    LEGAL ARGUMENT

### A.  The Discretionary Function Exception Does Not Apply: Both Federal and State Law Require Mandatory Reporting of Threats of Criminal Acts

The United States requests that the Court dismiss the entirety of this lawsuit arguing the wrongful death claims are based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 USC § 2680(a). This so-called "discretionary function" exception to the FTCA does not protect all governmental activities involving an element of choice. *Berkovitz v. United States*, 486 U.S. 531, 536-537 (1988). The Supreme Court has reasoned that the exception only reflects Congress's desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 US 797, 814 (1984).

The United States claims that because HIPAA and the corresponding VHA Directive adopting the HIPAA standard permit but do not require VA therapists to disclose "individually identifiable health information (IHI)" that they believe is necessary to prevent or lessen a serious and imminent threat to a person or the public, then the VA must be immune from liability under the discretionary function exception to the FTCA for its failure to protect Christine Loeber. Three things are true here. First, the VA was **mandated** to report Wong's threats both internally and to local law enforcement pursuant to both the CFR and its own directives and policies. Second, the VA did not have to disclose identifiable health information (IHI) in order to report Wong to law enforcement. It needed simply to identify Wong, assist with information about his whereabouts and advise of his appearance to allow law enforcement to protect Wong's three targets. The VA did not need to disclose his confidential records. Third, HIPAA itself provides for disclosure of IHI to prevent or lessen the threat to health or safety of others. 45 CFR 164.512(j)(1)(i))[5]. In short, alerting

---

[5] **(j)** *Standard: Uses and disclosures to avert a serious threat to health or safety*—(1) *Permitted disclosures.* A covered entity may, consistent with applicable law and standards of ethical conduct, use or disclose protected health information, if the covered entity, in good faith, believes the use or disclosure:
**(i) (A)** Is necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or

law enforcement was mandatory, not discretionary and federal law did not preclude such action. Similarly, the VA is authorized to disclose a veterans IHI upon compelling circumstances affecting the health or safety of any individual. 5 USC 552(a)(b)(8). See Ex. F to Declaration of Stephania Griffin. In sum the VA is not constrained to limit disclosure if facts render the mandatory reporting Directive and requirements applicable.

    1.   <u>The Discretionary Function Exception Does Not Apply: Federal Law and VA Policy Required VA Employees to Report Wong's Threats Internally and to Local Law Enforcement.</u>

A government employee's action is nondiscretionary when it is specifically prescribed by "a federal statute, regulation, or policy." *Esquivel v. United States*, 21 F.4th 565, 573 (9th Cir. 2021). If the VA employee has a mandate by way of federal VA directive, then sovereign immunity is waived, and the Court has jurisdiction to consider the case.

The Code of Federal Regulations and VA directives mandate that VA employees with knowledge or information about actual or possible violations of criminal law are required to immediately report such information to their supervisor, the VA Police, the Office of Inspector General, or local law enforcement as appropriate. 38 CFR § 1.200 establishes a duty upon and sets forth the mechanism for VA employees to report information about actual or possible criminal violations to appropriate law enforcement entities. The relevant regulations concerning mandatory reporting by VA employees are 38 CFR §§ 1.201 and 1.203. The use of the words "will" and "shall" unambiguously impose a mandatory duty on VA employees to report. *Kingdomware Techs., Inc. v. United States*, 579 US 162, 172 (2016); *see also NRDC., Inc. v. Perry*, 940 F.3d 1072, 1080 (9th Cir. 2019) ("[T]he rule's use of the word "will" unambiguously imposes a mandatory duty that constrains whatever discretion the Secretary might otherwise have possessed.").

Congress clearly did not leave the standard for reporting to the whim of the individual VA employee. In 2012, Congress amended 38 USC § 1709 to require the VHA to develop and implement a comprehensive policy on the reporting of public safety incidents and a "centralized reporting, tracking, and monitoring system for such incidents." 38 USC § 1709; *see also* Disruptive Behavior Committee (DBC) Guidebook (2021) at 5, 38 USC § 1709 "mandates incident reporting,

---

the public; and **(B)** Is to a person or persons reasonably able to prevent or lessen the threat, including the target of the threat;

training of employees, and violence risk assessment."). The VHA responded to 38 USC § 1709 by issuing VHA Directive 2012-026, Ex. N, "Sexual Assaults and Other Defined Public Safety Incidents in Veterans Health Administration (VHA) Facilities." This Directive sets forth a "unified policy describing the management of all individuals in VHA facilities whose behavior has or could jeopardize the health or safety of others." *See* VHA Directive 2012-026, Ex. N, (September 27, 2012) at 1 (emphasis supplied).[6]

This VHA Directive applied to TPH in Yountville as TPH was by definition a "VHA facility." *Id.* at 3. A VHA facility is defined in the directive as "any location that hosts VHA-sponsored programs that provide care, including VHA medical facilities, outpatient clinics…, State Veterans Homes, … mental health residential rehabilitation treatment programs including domiciliaries." *Id.* Moreover, "for purposes of reporting […] a VHA facility includes any location where a VHA employee is performing official duties." *Id.*

Dr. Gonzales was an employee of the VA who performed official duties at TPH, which was located in Yountville. TPH also meets the definition of a "VA facility" as the San Francisco VA Health Care System maintained an office in Madison Hall pursuant to the terms of the Memorandum of Understanding between TPH and the San Francisco VA Health System. According to the MOU: Ex. M, ██████████████████████████████████ ████████████████████ . ███████████████████████ ████████████████ . The VA and TPH were in a joint venture.

VHA Directive 2012-026 required "all VA employees with knowledge of or information about actual or possible violations of criminal law related to VA programs" to "immediately report such knowledge or information to their supervisor, any management official, or directly to the Office of Inspector General ("OIG") as directed by title 38 Code of Federal Regulations (CFR)

---

[6] Although VHA Directive 2012-026 indicates that it expired on March 31, 2015, the directive remained in effect until it was rescinded on September 12, 2022, by VHA Directive 5019.02(1). VHA Directive 2012-026 was thus the federal policy that the VA was required to follow prior to September 2022. *See Doe A.L. v. United States*, No. 16-2627, 2017 U.S. Dist. LEXIS 62263, at *17 (D. Kan. Apr. 24, 2017). VA OIG considered this policy to be in effect at the time of the shooting as it had not been superseded by more recent policy or guidance. See VA OIG Report No. 17-04460-84 (January 30, 2018). In a June 29, 2016, the VA Under Secretary for Health mandated the "…continued use of and adherence to VHA policy documents beyond their recertification date until the policy is rescinded, recertified, or superseded by a more recent policy or guidance." *See* Report No. 17-04460-84.

1.201." This reporting requirement extends to any possible criminal behavior that "could involve physical harm to other employees, VA patients, veterans or other individuals." *Id.*; *see also* 68 FR 17549, 17549 ("Given that there is a legal duty to report certain possibly criminal behavior, there should be an equal duty placed on employees to report even more serious matters that could involve physical harm to other employees, VA patients, veterans ….")

Furthermore, if there is no VA police component with jurisdiction over the offense, 38 CFR § 1.203 states that the information must be reported to federal, state, or local law enforcement officials as appropriate. In this case, there was no VA component with jurisdiction over TPH. In addition, 38 CFR § 1.204 requires that criminal matters involving felonies be immediately referred to the Office of Inspector General. The OIG is authorized by law to conduct an "independent and objective" investigation into any criminal activity, safety issues, or violations of law related to VA programs and operations. 5 U.S.C. § 402. Accordingly, the VA had a mandatory duty to report Wong's threats to local law enforcement, which in this case was the Napa County Sheriff and the OIG. None of that mandatory reporting occurred.

Additionally, 29 CFR 1960.8(a) and VA Directives required VA employees such as Jennifer Gonzales to report "recognized hazards that caused or were likely to cause death or serious physical harm," which included being potentially assaulted by patients. The location where Wong's threats were made and the killings occurred, TPH, is considered a "place of employment" for the purposes 29 CFR 1960.8(a) because VA staff provided on-site clinical mental health at that location. *See* 29 CFR. § 1904.5 (an employee's work environment is the place where employees are working or are present as a condition of their employment). The VA was therefore required to ensure that TPH was free from "recognized hazards that caused or were likely to cause death or serious physical harm," which included being assaulted by patients.

In 2017, OSHA published an updated compliance directive providing OSHA compliance officers with guidance on reporting threats of violence in the healthcare setting, including implementing "mandatory reporting procedures for all incidents and training employees on those procedures" and requiring "workers to report all assaults or threats." *See* OSHA Directive CPL 02-01-058 (01/10/2017). VHA Directive 7700 states that it is VA policy to comply with all OSHA

requirements. *See also* VHA Directive 7701 (May 5, 2017) at 2 ("It is VHA policy to maintain a safe and healthful work environment for VHA employees, volunteers, and other persons performing work under the direct supervision of VHA staff by satisfying all OSH requirements, including VA Directive 7700."). VHA employees are responsible for reporting unsafe and unhealthful working conditions to their supervisors. *Id.* at 18. The VA thus had concomitant duties to all users of TPH, including patients, employees, and other invitees, to comply with OSHA Directive CPL 02-01-058 in order to protect against workplace violence at TPH by reporting Wong's threats.

The US Department of Labor determined that the VA's response to Wong's threats was inadequate. In its September 6, 2018, Notice of Unsafe and Unhealthful Working Conditions, the USDL concluded that the VA violated 29 CFR 1960.8(a) by failing to implement an adequate workplace violence program to ameliorate the recognized hazard of being assaulted by patients.[7] After an inspection following the fatal shootings by Wong, OSHA cited the VA for a "serious" violation of 29 CFR 1960.8(a), finding that it had breached its duty to address employee safety with regard to workplace violence by not reporting patients who made physical threats to the Disruptive Behavior Committee and not requiring outside providers such as TPH to inform the VA if any patients made physical threats to VA employees. Law enforcement representatives are members of the Committee. Ex. P, pg. 2, 19, 20. The VA's 30(b)(6) witness, Sandy Folker, however testified that the practices OSHA required were already in place prior to the killings. Ex. L at  82:3-38:9; 186:7-189:18; 189:23-191:1-8.

VHA Directive 2012-026 also required VA employees to report any intimidating, threatening, or dangerous patient behavior that has *or could* jeopardize the health or safety of others to supervisory personnel who "must inform law enforcement officials and VHA leadership." Ex. N:

---

[7] This report is admissible for the truth of the matter asserted therein as a part-opponent admission pursuant to Federal Rule of Evidence 801(d)(2)(D). *See Hoptowit v. Ray*, 682 F.2d 1237, 1262 (9th Cir. 1982) (A statement is non-hearsay if it "is offered against a party and is . . . a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship."); *see also Irving Younger*, Sovereign Admissions: A Comment on United States v. Santos, 43 N.Y.U. L. Rev. 108 (1968) ("In civil cases, the statement of a government agent, if authorized by the government, adopted by the government, or touching a matter within the scope of the agent's authority and made during the life of the agency relationship, is admissible against the government as an admission.").

VHA Directive 2012-026 Attachment A(1). Attachment A(2) provides in part: "Information about actual or possible violations of criminal laws related to or involving VA employees, where the violation of criminal law occurs on VA premises, must be reported by VA management to the VA police component with responsibility for the VA station or facility in question. If there is no VA police component with jurisdiction over the offense, the information must be reported to Federal, state or local law enforcement…according to 38 CFR 1.203. Id. at Attachment A (2) All VA employees are required to comply with VHA directives regarding public safety incidents. The VHA's definition of "public safety incidents" included "disruptive or violent behavior that undermines a culture of safety." Disruptive behavior is behavior by any individual that is "intimidating, threatening, dangerous, or that has, *or could*, jeopardize the health or safety of patients, Department of Veterans VA employees, or individuals at the facility." *See also* Department of Veterans Affairs Medical Center, Medical Center Memorandum 05-33.  VA employees are trained to report to law enforcement. Ex. L at 207:7-19.

Such disruptive behavior is also reported through the VA's Disruptive Behavior Reporting System ("DBRS"), which is a secure, facility-managed, web-based electronic system to collect and manage reports of behavioral events that cause a safety concern. The main purpose of the DBRS is to serve as a tool to promote a safe environment for patients, VA staff, and visitors. Anyone with access to the VA computer network can report a disruptive behavior event in the DBRS, including non-medical personnel like Almon Bundy. When a report is filed, it generates an automated alert that goes to a designated subgroup of individuals on the Disruptive Behavior Committee ("DBC").

According to VHA Directive 2010-053, Attachment C, the DBC is to evaluate the risk of violence in a given setting or situation…and to recommend measures that may be taken to mitigate that violence risk. This is often called "threat assessment". Id.

Finally, the VA has determined as a matter of policy that its employees are required to comply with state mandatory reporting laws, and VA psychiatrists were therefore required to report Wong's serious threats to local California law enforcement pursuant to Welfare & Institutions Code §§ 8100(b) and 8105(c). Pursuant to VHA Directive 1160.08, the "VHA must comply with mandatory reporting and psychiatric civil commitment requirements of the jurisdiction within which

it operates." The CFR also specifically disclaims abrogation of "State or local laws and regulations applicable to the area in which the property is situated" for "[s]ecurity and law enforcement at VA facilities." 38 CFR 1.218(c)(3). Instead, the stated policy is that VA's policy is that "[w]hen a State law does not conflict with the performance of Federal duties […], VA health care professionals are required to abide by the State law." 85 FR 71838, 71842 (emphasis supplied).

Accordingly, under VA policy, psychiatrists who were aware of Wong's threats were required to comply with California law and report them to local California law enforcement pursuant to California Welfare & Institutions Code §§ 8100(b) and 8105(c).[8] California Welfare and Institutions Code § 8105 requires a "licensed psychotherapist" to "report to a local law enforcement agency, within 24 hours," the identity of a person who communicated "a serious threat of physical violence against a reasonably identifiable victim or victims." Cal. Welf. & Instit. Code § 8105(c). Then, pursuant to § 8105, the "local law enforcement agency" must notify the California Department of Justice to prohibit the person who made the threat from owning or purchasing guns. *See Id.*

In sum, the relevant regulations and directives cited above all demonstrate that VA employees were required to report Wong's threats both internally and to local law enforcement. Accordingly, because reporting was mandatory, the discretionary function exception to the FTCA does not apply, and the motion to dismiss should be denied. *See Vickers v. United States*, 228 F.3d 944, 953 (9th Cir. 2000). ("[A]lthough investigators undoubtedly enjoy discretion in the conduct of an investigation, this discretion does not extend to the question of whether to report to superiors or to investigate at all.").

2.   The Discretionary Function Exception Does Not Apply Because the Failure to Report Wong Was Not Based on Policy Analysis.

As set forth above, the discretionary function exception to the FTCA does not apply because the VA employees were required by federal law, regulations, and policy to report Wong's threats both internally and to local law enforcement. Accordingly, there is no reason for the Court to

---

[8] Such a report is required by California law if a patient communicates a serious threat of physical violence against a reasonably identifiable victim or victim and, therefore, is not in conflict with HIPAA and VHA directives regarding privacy. The HIPAA and VHA directives also state that that VA employees may disclose individually identifiable health information without an individual's signed, written authorization when "mandated or required by law."

proceed to the second part of the FTCA discretionary function analysis. *See, Vickers, supra* 228 F.3d at 953. *See also Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir. 1998). However, even if the Court were to proceed to the second part of the test, the government's argument that the discretionary function exception covers the conduct at issue would fail because the government has not presented any evidence to support the government's contention that the failure to protect Christine Loeber was "based on considerations of public policy." *Green v. United States*, 630 F.3d 1245, 1252 (9th Cir. 2011). (evidence in the record must support the government's failure to notify is susceptible to policy analysis).

The Ninth Circuit has generally held that "the discretionary function exception shields the design of a course of governmental action, not the implementation." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005). Even assuming that the determination as to whether Wong posed a safety risk to decedents was a matter of professional judgment, the Ninth Circuit has consistently held that "matters of scientific and professional judgment—particularly judgments concerning safety—are rarely considered to be susceptible to social, economic, or political policy." *Whisnant,* 400 F.3d at 1181.; *see also Camozzi v. Roland/Miller and Hope Consulting Group*, 866 F.2d 287, 290 (9th Cir. 1989) ("[A] failure to effectuate policy choices already made" will not be protected under the discretionary function exception."); (*Sutton v. Earles*, 26 F.3d 989, 998 ( 9th Cir. 2008) ("A decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect."); *see Powers v. United States*, No. C21-0517 TSZ, 2023 US Dist. LEXIS 17881, at *14 (WD Wash. February 2, 2023) ("[T]he Ninth Circuit has consistently differentiated between decisions implicating policy concerns, which are shielded by the "discretionary function" exception, and conduct that was allegedly inconsistent with the proper exercise of professional judgment or technical skill, which is not similarly protected.")

Defendant places undue emphasis on the VA employees' supposed compliance with the VA directives implementing HIPAA. The government concedes in its discovery responses that VA employees failed to protect the decedents not because they believed doing so would violate HIPAA

or VA policies but because they (erroneously) determined that he was not a serious threat to the health and safety of the three women he ultimately murdered. Ex. O.

The Defendant's argument that the decision not to protect the decedent was based on policy considerations is thus *entirely hypothetical*. In reality, the failure to protect Christine Loeber was not based on actual consideration of "social, economic, or political policy." Instead, the failure to protect was simply a breach of the general duty to exercise reasonable care in conducting a threat assessment. *See* Restatement (Third) of Torts § 42 (Am. Law Inst. 2013)

Accordingly, in determining whether the VA employees' conduct was reasonable under the circumstances, the Court will not be engaging in the type of public-policy judgment shielded by the discretionary function exception. Instead, the VA employees' failure to protect Christine Loeber may be readily assessed by the Court's use of the tort standard applicable to ordinary negligence. In applying the standard, the Court will not be required to review the reasonableness of the VA's policies but will only assess the reasonableness of the individual employees' conduct. *See Routh v. United States*, 941 F.2d 853, 856 (9th Cir. 1991) (contracting officer's decision whether or not a given situation created a safety hazard was not a public policy decision).

Defendant cites *dicta* from *Schurg v. United States,* 63 F.4th 826 (9th Cir. 2023), for the proposition that a challenged "decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Id.* at 834.[9] However, Ninth Circuit jurisprudence requires the government to identify "reasonable support *in the record* for a court to find, without imposing its conjecture, that a decision was policy-based or susceptible to policy analysis." *Bear Med. v. United States*, 241 F.3d 1208, 1216 (9th Cir. 2001) (emphasis supplied); *see also Terbush v. United States*, 516 F.3d 1125, 1134-35 (9th Cir. 2008) ("It is not sufficient for the government merely

---

[9] The source for the cited language was *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998). As the Ninth Circuit recognized in *Bear Medicine*, *Miller* was simply paraphrasing a portion of the Supreme Court's opinion in *United States v. Gaubert*, 499 US 315, 324-35, (1991), in order to draw a distinction between protected discretionary activities, "not to widen the scope of the discretionary rule." *Id.* at 1216. It therefore "should not be used to allow the government to create after-the-fact justifications for the purpose of liability protection." *Id.* The Court is bound to follow *Bear Medicine*, as it is the earlier of what would then be two conflicting precedential opinions of different panels. *See Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("[P]rior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *en banc*. Where there is direct conflict, the precedential decision is the first.").

to waive the flag of policy as a cover for anything and everything it does that is discretionary in nature. […]  Indeed, if all that were required were a bald incantation of "policy," then such an approach would swallow the second prong of *Berkovitz*.").

There is no cited evidence *in the record* indicating that the failure to protect Christine Loeber was based on the type of policy-related choices that the "discretionary function" doctrine was designed to insulate from liability. Rather, the United States "proffers the type of post hoc rationalizations against which the Ninth Circuit warned in *Bear Medicine*." *Powers*, No. C21-0517 TSZ, 2023 U.S. Dist. LEXIS 17881, at *16. Because the Defendant itself admits that the VA employees believed they had no reason to report or protect Christine Loeber "based on the information available to them," after-the-fact rationalizations that the decision was not to protect her *could* have been based on policy analysis is insufficient to divest this Court of jurisdiction.

The two main cases on which the government relies, *Gonzalez v. United States*, 814 F.3d 1022 (9th Cir. 2016), and *Weissich v. United States*, 4 F.3d 810 (9th Cir. 1993), are readily distinguishable. In both of these cases, the actual federal guidelines at issue explicitly gave the Government agents discretion to respond on a "case-by-case" basis. See *Gonzalez*, 814 F.3d at 1030; *Weissich*, 4 F.3d 810, 814. Here, in contrast, the VA employees do not have the discretion to choose to report or not to report safety incidents or potential crimes on a "case by case" basis, and the government certainly has not identified any governmental policy that allows VA employees such discretion. *See Vickers*, 228 F.3d at 953 ("The failure to report or to investigate therefore constituted a failure to follow the mandatory requirements prescribed by agency regulations as implemented by policy guidelines. Since those regulations and guidelines required investigation and reporting action in the instant case, the FTCA's discretionary function exception does not apply.").

3.  Directive 1605.01 Enables Compliance With The Law And Mandatory Reporting

Defendant's reliance upon Directive 1605.01 is misplaced. First, this directive addresses disclosure of personal health information (PHI). The reporting at issue in this case did not require disclosure of PHI. It merely required identification of Wong sufficient to protect his victims. It was not necessary to disclose his mental health records or information. That said, 1605.01 was drafted so that mandatory reporting would not be conflicted by privacy disclosure concerns. The very language

of 1605.01 specifies that there are mandatory reporting statutes and that 1605.01 is to be read to implement them. 1605.01(17)(1), (2).

In sum, the discretionary function exception to the FTCA does not apply because VA employees are required by federal law, regulations, and policy to report threats both internally and to local law enforcement, the failure to report Wong was not actually based on policy considerations related to HIPAA confidentiality and federal health information disclosure laws do not preempt mandatory disclosure laws or directives.

**B.       The Misrepresentation Exception Is Inapplicable In A Failure To Report Case When Mandatory Reporting Is Required**

The government next argues that the "misrepresentation exception" to the FTCA requires dismissal of the entire complaint because the "gravamen of the complaint is that the VA negligently failed to communicate information that Wong was potentially dangerous to law enforcement and Decedent." The government claims that the misrepresentation exception applies to any "claims of personal injury resulting from non-fraudulent failures to warn."

The government's recitation of the case law regarding the misrepresentation exception is misleading as it fails to address the controlling precedent, the Ninth Circuit decision *Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir. 1977) (en banc). In *Ramirez*, the Ninth Circuit directly held that the misrepresentation exception to FTCA did not bar a negligence claim based on failure to communicate information. *Id.* at 856. While that case involved failure to obtain informed consent in a medical setting, the holding was not limited to informed consent cases. Instead, the *Court* held that the misrepresentation exception was directed towards the "traditional and commonly understood" torts of negligent misrepresentation and common law deceit and, therefore, reserved for torts representing a "distinct cause of action" for misrepresentation or deceit rather than for claims of ordinary negligence that might involve "misrepresentation." *See id.*; *see also Neustadt v. United States*, 366 US at 706-07, 711 n.26.

*Ramirez* further cautioned that the misrepresentation exception must not be interpreted so broadly as to swallow claims by "the victim of negligent conduct [and] not of an esoteric form of misrepresentation." *Id.* "Any other interpretation would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it

commits." *Block v. Neal*, 460 US 289, 298 (1983). *Ramirez* is directly on point. While the failure to convey information is a component of the Plaintiffs' wrongful death claim, the gravamen of claim is negligence and negligence per se, not negligent misrepresentation. Negligent misrepresentation "requires an affirmative statement, not an implied assertion." *RSB Vineyards, LLC v. Orsi*, 15 Cal. App. 5th 1089, 1102 (2017). Ironically, the Plaintiffs initially included a cause of action for misrepresentation in their initial complaint, which the Defendant moved to dismiss on the ground that the Plaintiffs had not pleaded the claim with the particularity required under Federal Rule of Civil Procedure 9(b). This Court granted the motion with leave to amend, and the Plaintiffs declined to amend the complaint and removed the causes of action based on misrepresentation. There is no negligent misrepresentation claim before the Court.

To the extent the factual predicate for the two claims overlaps, the Supreme Court has held that the misrepresentation exception only relieves the government of tort liability for pecuniary injuries "which are wholly attributable to reliance on the Government's negligent misstatements." *Block v. Neal*, 460 US 289, 297 (1983) (partial overlap between misrepresentation and the negligence claim "does not support the conclusion that if one is excepted under the FTCA, the other must be as well."). Consistent with the Supreme Court's holding in *Block*, the Ninth Circuit has distinguished between failure to warn claims directly premised on misrepresentations and those cases that "only collaterally involve[s] misrepresentations." *Kim v. United States*, 940 F.3d 484, 493 (9th Cir. 2019); *see also Norcal Nursery, Inc. v. United States*, No. 2:20-cv-00868-MCE-DMC, 2021 US Dist. LEXIS 129646, at *13 (E.D. Cal. July 12, 2021). The gravamen of the Plaintiffs' cause of action is that Wong's threats of murder generated a "duty to protect" the three women at issue from Wong-an identifiably dangerous patient. The duty of care was to protect and the duty was breached.

The government relies on dicta from *Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003) for the proposition that the misrepresentation exception shields government employees from tort liability for *any* failure to communicate information. The *Lawrence* facts however are much different than these. In *Lawrence* a government inspector was asked about the nature of a crime committed by job applicant, Bello, who was in the Federal Witness Security Program who had a new identity. The inspector provided the complete criminal background to the employer but did not

mention that there was violence involved or that the individual had been a member of a large cartel. The Plaintiff was a minor suing the United States and Bello who filed a *Bivens* claim alleging sexual abuse by Bello. In *Lawrence*, the alleged misrepresentation was at the heart of the claim. The Plaintiff argued that Bello only received the job because the cartel relationship and guns involved were not mentioned. The Court agreed with the decision of the District Court's finding that "Inspector Hanrahan's behavior was objectively reasonable given the absence of directives, standards, or information that someone with Bello's background should be prohibited from working with children." 340 F.3d at 956. For this reason, the Court held Bello was entitled to qualified immunity. *Lawrence* did consider the defense of misrepresentation exception to the FTCA, and concluded the exception did apply on facts where there was no mandatory reporting requirement. In this case, there is no representation at all to law enforcement. Here there were mandatory reporting requirements to report that were not complied with. Misrepresentation is not the issue.

The government's assertion that the complaint should be dismissed pursuant to the misrepresentation exception thus fails because there was no representation and there was no reporting. *Lawrence, supra,* does not control, the misrepresentation exception does not apply. The motion to dismiss on this basis must be denied.

### C.  The Due Care Exception Is Inapplicable: VA Regulations Do Not Prescribe A Course of Action For VA Employees

To determine whether the due care exception applies, district courts in this circuit apply a two-prong test found in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005). *See, e.g., AFP v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 US Dist. LEXIS 122794, 2022 WL 2704570, at *14 (E.D. Cal. July 12, 2022). That test provides that the due care exception bars claims if (1) "the statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow" and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652. The government bears the "ultimate burden" of proving the applicability of the due care exception. *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992). If the government fails to establish either prong of the test, the exception does not apply. *Id.*

Defendant argues that the due care exception applies because VA employees "testified that they followed federal law governing the disclosure of Wong's protected health information"

pursuant to HIPAA. However, HIPAA and VA privacy regulations implementing HIPPA do not "specifically prescribe a course of action" for the VA employees to follow. The VHA directive on which the government chiefly relies, VHA 1605.01, is a "reference tool for documenting and facilitating the appropriate disclosure of information maintained by the VA" VHA Directive 1605.01 at 1. The first prong of the *Welch* test is not met and the "due care" exception to the FTCA is thus inapplicable. Further, VA employees who were aware of the threats were required by federal law, regulations, and policy to report Wong's threats.  These policies were not followed. Wong was never reported to the DBC, the SFVA Police were never informed of the threats. Nor was the OIG ever informed of the threats or Wong ever reported to the Napa County Sheriff. In light of the government's failure to follow its own regulations, the government's assertion that all the VA employees involved acted with "due care" is unsupported by the factual record.

### D.  The Plaintiffs Claims Are Not Preempted: VA Mandatory Reporting and State Law Do Not Conflict

In its final argument, Defendant argues that HIPAA expressly preempts California's mandatory reporting requirements and if not expressly so, preempts through conflict. 45 CFR 160.203 provides that for express preemption to apply there first must be a standard, requirement or implementation that is contrary to a provision of State law. On the facts of this case California State common law or Civil Code codification of *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425 (1976) is not contrary to any such standard, requirement or implementation. 45 CFR 164.512 is not contrary to Civil Code section 43.92 or *Tarasoff*. The CFR section allows the disclosure of PHI to prevent or lessen a serious and imminent threat to the health or safety of a person and is to a person reasonably able to prevent or lessen the threat. 45 CFR 164.512 (j)(i)(A), (B). In short, VA Directives mandate reporting as does the California Civil Code and this Code section in no way inhibits reporting even to the extent it was necessary that PHI be distributed. Further, disclosure of PHI was unnecessary, and 45 CFR 164.512 is not applicable in any event.

Analyzing the theory of conflict preemption, there is no actual conflict between HIPAA and California law as 45 CFR § 164.512(j)(1)(i) expressly permits the disclosure of personal health information, including psychotherapy notes, if such a disclosure (1) is necessary to prevent or lessen a serious and imminent threat to the health or safety of the patient or others and (2) is to a person(s)

reasonably able to prevent or lessen the threat. This law in no way conflicts with VA Directive 2012-026, *Tarasoff* itself, California common law or California Civil Code section 43.92.[10]

45 CFR § 164.502(b)(2)(v) further allows disclosure for threats or concerns that do not rise to the level of "serious and imminent" if such disclosures are "required by law." See 45 CFR 164.512. As set forth above, VHA Directive 1160.08 states that the "VHA must comply with mandatory reporting and psychiatric civil commitment requirements of the jurisdiction within which it operates." The Code of Federal Regulations also specifically disclaims abrogation of "State or local laws and regulations applicable to the area in which the property is situated" for "[s]ecurity and law enforcement at VA facilities." 38 CFR 1.218(c)(3); see also 85 FR 71838, 71842  ("When a State law does not conflict with the performance of Federal duties […], VA health care professionals are required to abide by the State law. Therefore, VA's policies and regulations will preempt State licensure, registration, and certification laws, rules, or other requirements only to the extent they conflict with the ability of VA healthcare professionals to practice healthcare while acting within the scope of their VA employment.") (emphasis supplied).

There is no evidence that California reporting laws would conflict with the VA employee's ability to practice health care. On the contrary, long-term VA employee Tana Teicheira, LCSW, testified that there is no actual conflict between Tarasoff and HIPAA. Ex. F (V II) at 122:22-25. The government hypothesizes "scenarios in which a provider would be forced to report under California law but could exercise his or her discretion under federal law about whether to report." However, conflict preemption requires an actual -- rather than hypothetical or speculative -- conflict between federal and state law. *Total TV v. Palmer Commc'ns*, 69 F.3d 298, 304 (9th Cir. 1995) ("[A]hypothetical conflict is not a sufficient basis for preemption."). Mere tension between federal and state law or a

---

[10] California Civil Codes section 43.92. (a) states: There shall be no monetary liability on the part of, and no cause of action shall arise against, any person who is a psychotherapist … in failing to protect from a patient's threatened violent behavior or failing to predict and protect from a patient's violent behavior except if the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims. (b) There shall be no monetary liability on the part of…a psychotherapist who, under the limited circumstances specified in subdivision (a), discharges his or her duty to protect by making reasonable efforts to communicate the threat to the victim or victims and to a law enforcement agency.

potential damages action is not enough to establish conflict preemption. *Incalza v. Fendi N. Am., Inc.,* 479 F.3d 1005, 1010 (9th Cir. 2007); *see also Silkwood v. Kerr-Mcgee Corp.,* 464 US 238, 256 (1984) (Preemption should not be judged on the basis that the Federal Government has so completely occupied the field of safety that state remedies are foreclosed but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law."

Defendants' interrogatory responses state that the failure to report was not due to HIPAA concerns but instead because none of its employees believed that they had "received [d] a communication from Wong about [Christine Loeber] that warranted reporting." There is no actual conflict between HIPAA and California law in this case. There is no preemption at all here.

## V.     OBJECTIONS TO EVIDENCE

Plaintiffs incorporate by reference as though fully set forth herein Plaintiffs Objections to the Declaration of Stephania. Plaintiffs object to the Declaration in its entirety as attempting to provide expert opinion on the law. *McHugh v. United Service Auto. Assn* 164 F3d 451 (9th Cir. 1999); *See Crow Tribe of Indians v. Racicot,* 87 F.3d 1039, 1045 (9th Cir.1996) that is inadmissible. In addition, Plaintiffs object to the following paragraphs for reasons set forth:

Paragraphs 9, 20, 21, 24, 25, 26, 28, 32, 36, 37, 40, 44, 48, 49, 52, 55, 56, 59, 60, 64, 68, 69, 70, 71, 72, 73, 74: Matters of law are inappropriate subjects for expert testimony. McHugh, supra; *Maffei v. Northern Ins. Co. of New York,* 12 F.3d 892, 898-99 (9th Cir.1993); *Aguilar v. Int'l Longshoremen's Union Local No. 10,* 966 F.2d 443, 447 (9th Cir.1992.)

Paragraph 9: "All" is without foundation and overbroad as the link does not include past Directives now superseded. Paragraphs 10, 17, 22, 23, 35, 53, 55, 68, 70, 71, 73, 74 are without foundation and speculative as referencing VA thinking or issues it considers.

## VI.     CONCLUSION

Defendants Motion to Dismiss should be denied.

DATED:  August 1, 2024                          LAW OFFICE OF SCOTT RIGHTHAND
                                                                    By:
                                                                    SCOTT RIGHTHAND
                                                                    BRITTANY ROGERS
                                                                    Attorneys for Plaintiffs

**PROOF OF SERVICE**

I, Brittany Rogers, am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 425 California Street, Suite 900, San Francisco, California, 94104.

I served the foregoing document(s) described as the following:

**PLAINTIFFS DONALD AND MARIE LOEBER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS CASE NO. 3.21-CV-03866-LB**

[X]    by placing the original [X] true copy(ies) thereof enclosed in sealed envelopes addressed as follows:

[ ]    **BY ELECTRONIC SERVICE/NEF**: Service was accomplished through the Notice of Electronic Filing for parties and counsel who are registered ECF Users.

[ ]    **BY PERSONAL SERVICE**:  I caused such envelopes to be delivered by hand this date to the persons listed below:

[ X ]    **EMAIL-FRCP 5(b)(2)(E)** pursuant to written consent to service by electronic means by placing in a secure email in accordance with this office's practice, and addressed to the party's last known email address listed below:

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 1st, 2024 in San Francisco, California.

_____/s/ Brittany Rogers_____
*Brittany Rogers*

## SERVICE LIST

STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
DOUGLAS JOHNS (CABN 314798)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (415) 846-8947
FAX: (408) 535-5081
Douglas.Johns@usdoj.gov
**Attorneys for Defendant**
**UNITED STATES OF AMERICA**

Ronald Foreman, Esq.
**FOREMAN & BRASSO**
850 Montgomery Street, Suite 300
San Francisco, CA 94133
Tel: (415) 433-3475
Fax: (415) 781-8030
Email: foremanandbrasso@foremanandbrasso.com
rdf@foremanandbrasso.com
polly@foremanandbrasso.com
iah@foremanandbrasso.com
**Attorney for Plaintiffs**
**MARC GOLICK**